DILL, PLAINTIFF, *v.* ROUSH ET, DEFENDANTS.

Common Pleas Court, Meigs County.

No. 13354.   Decided August 7, 1964.

*Messrs. Crow, Crow & Porter*, for plaintiff.
*Messrs. Webster & Fultz*, for defendants.

BACON, J.  Plaintiff says that on or about the 12th., day of July, 1960, the Rocksprings Brownie Scout Troop planned a hay ride and weiner roast. The defendants, Howard Roush and Nor-

man Weyersmiller, provided a tractor and a wagon, which were coupled together in part by a wooden connection and used to provide the transportation on the hay ride for the said Scouts. There was no metal chain or other safety device coupling the said wagon to the said tractor.

Plaintiff accompanied the said Scout Troop in a supervisory capacity, and was an occupant of said wagon, which facts were known to and accepted by the defendants.

The defendant, Howard Roush, was driving said tractor to which was coupled said wagon, in Meigs County, Ohio, on a road known as Peach Fork Road, and as said tractor and wagon were proceeding along Partlow Hill said wooden connection broke, allowing the said wagon to run backwards down said Partlow Hill, causing plaintiff to fall from said wagon and thereby proximately causing her injuries as hereinafter set forth.

Plaintiff further says the defendant, Norman Weyersmiller, accompanied said Scouts and adults on the hay ride, and that both said defendants knew or should have known that the said wagon and tractor were coupled in part with a wodden connection and would be hauling thirty-eight persons on a hay ride, and that there was no metal safety chain or other safety device coupling said wagon to said tractor.

That as the direct and proximate result of the negligence of the defendants, as aforesaid, the plaintiff was severely and permanently injured and disabled in the following respects: she sustained an injury to her cervical spine and to the associated ligamentous structures which has developed into osteoarthritis; she sustained a lumbosacral joint sprain; a concussion to her skull; abrasions to her back and bruises over her body; she has suffered severe pain since the date of the accident and will continue to suffer pain in the future; and she suffered a severe and permanent shock to her nervous system.

That by reason of said injuries, she has incurred expenses in the nature of doctor bills, medicines, hospital bills, and treatment since the date of the accident, and that she will continue to require medical attention in the future." So reads plaintiff's petition.

To plaintiff's petition the defendants, Howard Roush and Norman Weyersmiller, demur, upon two grounds.

One, that the facts alleged disclose Betty Dill to have been a "guest" of defendants, but are insufficient to establish defendants' "wilfull and wanton misconduct" within the purview of Section 4515.02, Revised Code, Ohio's so-called "guest statute."

Two, that having alleged that plaintiff accompanied the Scout Troop in a supervisory capacity, she had a duty to inquire into the safety of the apparatus used to convey the scouts.

Although the court did not point it out in the opinion recently filed in the case of Charles Dill vs. the same defendants as in the instant case, these two arguments are not entirely consistent.

Betty Dill could hardly occupy the status of a guest of the defendants, and at the same time be the supervisor or person in charge of the "hayride."

Betty Dill cannot occupy at one and the same time the legal status as a "guest" of the defendants and that of supervisor of the defendants.

As in the case of that wherein her husband, Charles Dill, is plaintiff, this court rejects the argument of defendants in connection with Section 4515.02, Revised Code.

Accepting the averment of plaintiff that she accompanied the said Scout Troop in a supervisory capacity, this court looks to the legal definity of the verb "to supervise."

The very word "supervise" invokes responsibility. This responsibility is defined quite pointedly in Words & Phrases, Vol. 40, where at page 767, we find the definition as follows:

" 'Supervising' means taking part in the work, . . ."

Also, at page 768,

". . . a 'supervisor' is one who supervises; an overseer, an inspector; . . . And the word 'supervise' means to oversee; have charge of, with authority to direct and regulate. . . ."

It may be that Betty Dill never drove a tractor, was a city or towngirl rather than a farm girl. She may have been "green" when confronted with towing connections between farm tractors and trailers or wagons. Or it might have been that her experience was considerable in such matters.

However, when she assumed a supervisory capacity to see that her charges enjoyed a hayride, she automatically invoked

a responsibility to see that it was a safe hayride. She had a duty to see that suitable equipment was employed and that persons of mature judgment conducted the operations.

Betty Dill may or may not have been the person who procured defendants' tractor, trailer and personal services for the hayride. The pleadings leave much to be desired in establishing whether or not Betty Dill had a superior or assistants in her duties as a supervisor. But the pleadings definitely disclose she was a "field" supervisor, and having gone "into the field" only she could have passed final decision as to whether or not defendants' equipment was suitable and whether defendants were employing reasonably safe practices in connecting the wagon to the tractor.

It is very possible Betty Dill never gave much thought to the responsibilities she assumed when she agreed to "supervise" a hayride for the Brownie Scouts. Nevertheless, her charges were 37 girls averaging possibly ten years of age, whose judgment would be quite immature. The trust of these girls, as well as the trust of the leaders of the Girl Scout movement, was in Betty Dill.

This opinion is not to be construed as intending any criticism of the plaintiff. It appears only "too American," or one might say "typically American" these days to allow anticipated pleasure to pervade one's brain, obscuring the normal heed one might pay to responsibility. How else explain the killed and maimed as Americans continue to speed down the highways, those needlessly drowned as we resort to beach, lake, pond or stream, ad infinitum?

Far too often one pays little attention to his responsibilities until there is an unfortunate occurrence, and the sheriff arrives with a summons requiring answer to a complaint. Here the defendants probably now realize they had greater responsibilities than they dreamed of when they consented to provide the conveyance and power for the Brownie Scout hayride. But the law appears to be that the plaintiff also, as a supervisor, had equal or even perhaps a greater responsibility.

The demurrer is sustained upon the second ground assigned by defendants.